Good morning, Your Honor. My name is Lauren Brennan with the Lindt Law Firm. I'm here on behalf of the petitioner ITC Designs. My colleague Doug Lindt is with me at the council bench here. This is a case in which ITC had registered, duly registered two designs with the Copyright Office, and those designs were entitled to a presumption of validity. Yet the district court decided to create a new exception to the statute that's not consistent with Ninth Circuit decision. The district court said that testimony from Mr. Hugh, a former employee of ITC, that he recognizes pre-existing clip arts in the designs does not demonstrate a lack of originality, but under the, quote, unique circumstances of this case, rebuts the presumption of validity. The district court did not describe what those unique circumstances were, but this ruling directly contravenes Ninth Circuit precedence in two important areas. Number one, the district court erroneously uses the analytic dissection test for infringement to test validity. Number two, the district court treats the presumption as a presumption that goes to the burden of production rather than the burden of persuasion. Let me elaborate if I can. You have two tests. First, you have to prove that you have a valid copyright, then you prove whether or not it's been infringed. Validity, you look at the work as a whole. This is what this court said most recently in L.A. Print Text versus Aeropostale. Even though the floral designs may have incorporated pre-existing elements, it doesn't matter. You can still have a copyright in the original arrangement. The same thing happened in Roth greeting cards. The district court said on summary judgment, oh, the text is not original. And this court said, no, you have to look at the totality of the text and the cards and the design because you look at the compilation as well. What about the totality of this design makes it original? Each of the elements, you have separate elements. They were put together into a layered look to create a whole collage of elements. The defendant, Mr. Hugh, never says that the collection, the compilation, is not original. And the defendants admit that in their answering brief. Well, if the design is simply repeated over and over and over and again, is that an original compilation? When you say can repeating designs be an original? Yes, they can. That's the North Coast industry. The where he has the repeating designs here. It's both a copyright and a trademark. Repeating designs can certainly be original. But in this case, Mr. Eisenberg testified that this was a compilation. He said it created a layered look. He had various elements that were put together to create an entire layered look. The court can look at this design and see that it's not a copy. It was created by human hands. And it would be their burden to show that it was a copy anyway, right? Not yours to show that it's not. That's correct. It's their burden to identify a pre-existing work and show access and substantial similarity. That's North Coast. Mr. Hugh doesn't do that. All he does is say, well, I recognize you have butterflies, and they had clipart butterflies in their library. That's like saying if I'm a novelist, I'm a crime novelist, and I have a library full of books, I have to prove that I didn't copy some other crime novelist in writing my crime novel. If I'm and he's read Martin Luther King's I Have a Dream speech, does that mean he copied it? No. It's the burden on the defendants at the validity stage. This is important. We're at the validity stage in order to take and show that there was a pre-existing work we copied. Now, at the infringement stage, they get the benefit of analytic deception. If this were a case in which we were only saying they copied the butterfly, and I'm trying to prove substantial similarity, then they could argue that the butterfly wasn't original, end the analytic dissection test for infringement. But we're not there. We're at the stage of whether the copyright is valid, and that means seeing the work as a whole. Mr. Hugh never says that the work as a whole is not valid. The color arrangement itself is valid. The Blinstein, the Supreme Court, said you can look at the work itself and see it's obviously original. We admit it's created by human hands. There's no objection that Sonia Beck and Jin Sung-yo created the works. It's not a mechanical copy. So why did you not try to get affidavits from the authors of these designs earlier in discovery? We did, but A, they weren't working at the plant at that time. So, you know, these are businesses. Artists come and go all the time. These two particular people weren't working at the time. We had to go and investigate who the in the declaration here of Mr. Lind that the defendants actually interviewed these two artists before their summary judgment. We got the papers were due, the response to summary judgment on Christmas Eve. I know because I was there writing them on Christmas Eve. We asked for an extension, a short extension of time so we could go and interview these people. They were both in Korea. They said no, and the court said no. Had we had that time, we could have gone and got their hundreds of these designs in a month. So trying to track and trace every single one and two does what becomes an incredible burden. We're making clip art. We're not writing law review articles, and that's what this is about. They are instructed from day one, be original. There's an evidence code production, evidence code 406, very specifically says evidence of an organization's routine practice may be admitted to prove that on a particular occasion, the organization acted in that practice. Mr. Eisenberg testified to their routine practice. The court should have given us... Do you keep any more detailed records than just this routine practice and general instruction? Do you keep records of how the designs are created? As far as I know, no. They don't keep specific records of who does what and who looks at a clip art. You're going fast, but you have to understand... But does that make... I mean, I know that the general rule is that they have the burden to show that the copyright is invalid, but you have the information about how it was created. So does that put them at an unfair... In this situation, is that unfair to them? No, not at all. Why not? Two reasons here. Number one, they had access to all the records that we had. Everything that we had, they had. They could come and they could look at all of our clip art and see what all the books are. Number two, remember, this is the validity stage. This is validity. They're going to get all that benefit if it came to the infringement stage. If there was an infringement... But we know here that they copied the design. So really, all of the work is at the validity stage, right? And if you... I mean, just as a hypothetical, I know this isn't what you say happened, but say your business practice is to just copy and then not keep a record of the fact that you just copied. How do they show that you just copied if you're not keeping records exactly of how you did things? But how could that possibly be a business? Think about that. If I were selling fabric designs to a May Company and May Company came in and said, make me a fabric design. And I said, okay, I'm copying out of a clip art book. I wouldn't be in business. They'd never come into me. Why would they when they can copy it themselves? They come to me because they know I'm going to look at pre-existing patterns and they're going to tell me butterflies are in style right now. Flowers are in style. Make me a design. And I'm not going to go and make a design and create a brand new butterfly. I'm going to go look at what's there in the business, what people are seeing right now. I'm going to be inspired by that. I'm going to make some variation to it to do a dress. That's my business. If I were in the business of slavishly copying from clip arts, I wouldn't be in business. And so it doesn't make any sense. And did you produce, did they ask for the names of the clip art books? And did you produce that information and discovery? I'm going to have to ask, defer to my counsel here if he wants to on rebuttal. But as far as I know, they asked for them and we made all the records available so that they could come to the office and look at the books. I have to say, I'm not the one that a hundred percent knows that. And my counsel can answer that. Okay. Second thing that I then wanted to address here is the idea about the presumption. This is something I think that's very, very important. What is the nature of the presumption in the Copyright Act? It says it's prima facie evidence of validity if you have a valid registration. There's no question the registration was valid. But what does that mean? The house report means, says, it alters the burden of proof. In entertainment, in most entertainment research group, this court said, you're right. It affects the burden of proof. What did the Supreme Court say in Department of Labor versus Greenwich Collieries? When Congress uses a phrase in a statute, we look at the common law antecedents. When Congress used burden of proof, they always meant burden of persuasion, not burden of production. The Wright and Miller treatise give a football analogy. You mentioned that the burden of proof was mentioned in the statute or in a report? The statute says it's prima facie evidence of validity. The Congressional House report says it's intended to alter the burden of proof. So we're supposed to take the report of Congress's one house as interpretive of the statute? How do we know the Senate agreed to that? This was the House report. Yeah. So the House report. As I recall, it was a joint report. But if I may, Your Honor, in entertainment research, this court also said it affects the burden of proof. But if we just look at the language, do you need us to be looking at this report? I'm kind of confused about why you're talking about this. Can't we just look at the language of the statute and isn't it good for you on its own? What I'm trying to say is that if you look at all the case law, it refers to is this statute, it says it's prima facie evidence of validity. How does it work? The modern law of evidence now treats presumptions as going to the burden of production. The Thayer-Wigmore are going to the burden of persuasion, the burden of proof. So all I'm trying to say is that this statute goes to the burden of persuasion. And how does that work? The Wright and Miller, when they're talking about burden of persuasion, give this sort of football analogy, if I may. First 20 yard lines, the opponent to the presumption doesn't even present evidence to challenge the presumption. The proponent of the presumption is entitled to a directed verdict on the presumption. That's it. The last 20 yards over here, the opponent of the presumption presents so much evidence contesting the presumption that unless the proponent of the presumption comes forward with their own evidence, the opponent of the presumption gets a directed verdict. Then there's the 60 yards in the middle. The opponent of the presumption presents some evidence to challenge it, but that evidence does not entitle them to a directed verdict. In that case, the presumption and the contrary evidence is a jury question, must go to the jury. This is what this court said in North Coast. It's what it did in Sarinsky. It's what the Second Circuit did in Gaston. We've cited numerous cases under the 1909 Act and the current Act that says that's how you treat the presumption. I would say that the evidence here doesn't even challenge the presumption. Right. Isn't it your argument that it doesn't challenge it anyway because it doesn't show what it used to show in validity? So this seems a little bit like a tangent, right? Well, I'm trying to be as a careful lawyer. If you agree with me here that I'm trying to say, even if you tell me that Mr. Hughes somehow challenged the presumption, I'm still asking this court to say summary judgment was improper because even if he gave some challenge to it, this court should still have said, well, it's still a jury question. I have to put Hughes' declaration and the presumption in in front of the jury. So in either case, I shouldn't have gotten summary judgment. So I'm, excuse me for trying to be a careful lawyer. I'm trying to make both arguments here to you. Did you want to say some time for rebuttal? Oh, yes, I do. I'm sorry. So I will save some time for rebuttal. Thank you, Your Honor, for reminding me. I appreciate that. Good morning. Matthew Soror appearing on behalf of Appellee's Sorority Kids, excuse me, Avalon Apparel and Ross Storrs. Plaintiff's symphony suite design and medallion art design incorporated materials that copied from clip art books. It's admitted as such in the briefs before this court. On summary judgment, the defendants offered evidence of this copying, the declaration of a former employee who specifically identified those portions of the design which were copied from these books. That rebutted the presumption. He didn't identify the books, though. All he said is I recognize these general designs, right? He did not identify the books. Now, going to one question the court asked earlier to my opposing counsel, we did ask for all these books in discovery and did not get them. We were told in discovery that the only evidence that the plaintiff had as to originality was the designs themselves. We asked specifically. Did you move to compel? We did move to compel, and the court granted that motion after ITC refused to produce a properly prepared witness on the creation and originality. No, but did you move to compel the names of the books? It seems to me that you should have said, you know, you could have identified the specific patterns if you'd gotten their books. You could have looked through their books and said, here's the pattern. So I'm trying to understand why you didn't do that. What blocked you from finding out the books and actually showing that there was a copy? We did. The motion compel was granted. They said they didn't have any books. They said they had nothing. Those books didn't, they don't have them. They said the only thing they have on originality is the designs themselves. The court granted, and the transcript from the that you have on these designs. We asked for, show how pre-existing. Right, right, but it's one thing for them to say, we don't remember which book this design came from. It's another thing for them to say, we can't tell you the names of the books on our shelf. Did you ask, what are all the books you have? And they said, we can't tell you. We did. Where is that in the record? We did. It is at, I'll find it, Your Honor. I believe it is at, ITC's discovery responses are at the supplemental record at 124 and 133. Admitted to not have any records or information as to where these pre-existing elements came from. That's a different question. Where is the question where you ask, what books do you have on your shelf? And they say, we can't tell you what books are on our shelf. Those are in the same discovery. Where's the question, where's the thing I'm asking about? I believe it's those same discovery responses in 120, supplemental record 124 and 133. Turning to the presumption, Your Honor, the Hughes Declaration not only talks about how the specific background elements or certain elements in both designs were copied off books off the shelves of ITC, it also talks about the pattern and practice of ITC of doing this, of doing this exact thing, of copying designs out of books. And counsel makes comment that if their design, if their business model was only to copy things out of books, no one would, no one would do business with them. Well, that isn't true. What they actually sell is fabric. They sell fabric with designs on them. And the mere fact that they don't, they copy books, they copy images out of clip art books would not impede that business model at all. They would copy a design out of clip art, and actually that would be the more efficient way for them to do it, opposed to employing designers and create new designs wholly. They copy them, they put it on fabric, and then they sell it. The entertainment research case, which was cited by my opposing counsel earlier, states that an infringement defendant, in order to rebut the presumption of validity, must simply offer some evidence or proof to dispute or deny plaintiff's prima facie case. The court held that the proof that plaintiff's product was copied from another work or similarly probative evidence of originality, or lack thereof, is sufficient to rebut the presumption. Here, the Who Declaration talks about how there's portions of design, if not all of the design, that were copied. Of course, we can't know. But he doesn't, I mean, all he says is, I sort of recognize these patterns, and I'm looking, I mean, I'm looking for, at these discovery requests, I have not yet found one that says, identify the books that your artists were using. All of these seem to be, tell us about this design, tell us about that design. So it seems like you could, I'm a little bit worried about the fact that they have the information about how they create the designs, and so it's a little hard for you to show invalidity. But if you're able to find out the books they're copying from, look through them, and say, okay, here's the design that they copied, that would be something you could do. And I don't really understand why you didn't do that. Instead, you have this vague thing where this person is saying, I generally recognize this. Two points, Your Honor. One, I believe, if I'm remembering the discover request specifically, I believe it's towards the end of those requests, where we ask more broadly all the books they have, so that may be where they are in that specific request. Second of all, if these designs came from books, and we asked them for the book showing the pre-existing materials, show what they came from, those books would be records of what they did. But they didn't. And I don't have any case, if you have a case that says they have to keep better records, I'd be interested in what it is. Instead, they have a presumption that their design is valid. And you have a burden of some sort to show that it's not. And you could find out what books they're copying from, and then show us that it's copied. But you haven't. And unless you have some reason why they blocked you from looking at their books, which you haven't yet actually identified, and that you moved to compel, and you did everything you could, then I'm not sure why we don't put it on you for failing to meet your burden. Sure, Your Honor. The discovery request, and if I'm not remembering the specific page, I'm happy to look for that and submit that to the court, because that is in there. We did ask for it, and that was the whole point of the motion to compel, was let's see what pre-existing works you have. Let's see how you arranged them, how you selected them. Counsel makes the argument that a compilation can be original, it can be copyrightable. We agree. We agree it can be. If they take a pre-existing work, and they take two pre-existing works, and they mix them, they change them. And so given that you can see that, how does the Hugh Declaration go to validity at all? It says parts of it are copied, but if you agree that the compilation could still be original, how do we have any evidence that this compilation is not original? We don't know this is a compilation, Your Honor. There's no evidence that this is a compilation at all. Howard Hugh was employed at ITC three to four years before that declaration was signed. He did not have an encyclopedic memory as to what every image and every page was. It is certainly possible that the images at issue in this case were copied full out of a page. But we don't have, but it's your burden to show that their design is invalid, and you haven't even alleged what you just said. You'd have to say the whole compilation was copied, and you haven't even suggested that it is. I would submit to the court that our burden is to submit some evidence to challenge the originality of their design. But the originality of their design includes the compilation, which you just conceded. The compilation itself, the arrangement itself, could be the original part, and you've said nothing. Hugh says nothing about the arrangement. In this case, as the court noted earlier, as a defendant in this case, we are stuck with what plaintiff gives us. If we didn't have a former employee, we wouldn't have had anything. Having a former employee, he is able to testify that, yes, part of this design is copied. All we would have to do then to restore the originality is to say, yeah, maybe we copied this part. But look, we added this, or we copied this, or we combined these together. Once in opposition to summary judgment, they offer no evidence, and they admit they have no evidence as to originality whatsoever. It seems like it's your burden to either get their books, look through them all, and find the page that's exactly the same as the design. Or the other thing you could have done, and I'm sort of baffled by this, the other thing you could have done is given them their extension to go find these artists in Asia, and waited a week, and then deposed those artists or whatever, and found out if they copied the whole thing or not. But instead you blocked that, and it seems like it could have helped you. So I'm really confused about why you did that. In terms of the getting additional discovery, your honor, we had tried for months to try to get a witness on the originality and creation of these designs. We followed the 30, we served our 30. Right, I understand that they delayed, I understand that they did not behave perfectly. But once they said, we finally found them, give us two more weeks. Why didn't you say, great, we can finally figure out what happened here with the compilation? I don't understand why you said, no, it's too late. Well, your honor, at that point, we were past discovery cutoff. The motions were now fully briefed. And when they did request the additional time for the discovery, they had nine months to figure this out. Now they're coming up with someone... But you had a significant hole in your motion. Your motion only could say, we have a vague idea of these pieces. We have nothing to say about the compilation. You must have known that under the rule about what validity needs, you had a problem. But when they offered no evidence that it was accomplished, this wasn't a situation where they say, look, I know we combine these things, but the artist will tell us exactly what went where. They didn't even have the, we know we combine these things. Right, but the artist might have maybe known. But we certainly don't know. And they had no records to even establish what these artists did. Another thing that I think is important to note is the identification of the artist was not offered in opposition to the summary judgment. The identification of these artists was only offered in the Linn Declaration, which was offered to the court only for the purpose of asking for more time for discovery. The Linn Declaration was not cited in opposition to summary judgment showing that this was a compilation. There was no evidence whatsoever. Right, but the summary judgment motion had this problem that you didn't know anything yet about the compilation or the arrangement. So I understand that maybe you couldn't have because you didn't have access to the artist. But then they come back and they say, give us some more time. We just found them. And that might have given you the opportunity to interview them and find out. In fact, they copied the whole thing. But instead, you didn't. You fought it. And now you're in a situation where you don't know anything about the compilation. Well, we don't know anything about how they created the designs because they haven't told us anything about how they created the designs. Now, going to the presumption, which is. Well, they have. They've said, yes, we copy pieces, but we always do something original with them. They have said something. And if that's right, they win. But they didn't say they did anything original in this case. Well, their general policy said they always do that. That's it. And we have to have the inferences in their favor when you're moving for summary judgment. But their policy isn't at all tethered to these designs. The other problem with what does that mean? If they have a policy, we do this always. They do it for these designs, too, right? Well, no, the problem is that when he says that the policies do something original, there's no question or there's no resolution. The question is what you did. That's original, sufficiently original support if you add one extra strand of hair to a picture of a person that may be original in terms of their policy, but is it original for the purposes of copyright? But it's your burden to show that whatever it was that they added wasn't enough because they've got the presumption because they have a copyright. Yes. And once once our presumption was back up a second, the presumption affects one of production. The burden of persuasion is on the plaintiff. Always they need to show they have a valid copyright. They need to show substantial similarity. They need to show copying. The presumption of validity shifts that. In the first instance, the defendant. It shifts the burden of production. You now need to come to the table with something showing that the design attacked the originality of it. There's other ways to rebut the presumption. In the Lamps Plus v. Seattle lighting case, this court found that when Lamps Plus took four component parts and put it together, that also rebutted the presumption. That wasn't a case about copying at all, but it still rebutted the presumption. That was probative evidence going to originality. OK, so when we come forth with evidence as to these designs are original, they were copied whole or in part, that is something that attacks the originality of the designs. It doesn't go to the entire test. So, I mean, yes, you're saying vaguely that some pieces of this seem to be copied, but you have to show that the whole thing was copied or that the way they composed it is not original. And I just don't see how you've even met a burden of production as to the whole question that we need to look at. Well, and again, when you're talking about the design as a whole versus a component part of it, the Entertainment Research case is one where what the defendant put to rebut the presumption was a two-dimensional picture of a cartoon character. I think it was the Pillsbury Doughboy. The product at issue there was an inflatable costume. The defendant didn't offer evidence that the whole thing was copied. They just said that the Pillsbury Doughboy was copied. Plaintiff then came. The court found that the presumption was rebutted. Plaintiff then comes in with, here's what I did that's original. I made the three-dimensional costume that could be worn and I changed the facial expressions. So plaintiff doesn't come in and say, look, here's a piece of paper showing you copied the entire thing. It showed that you copied these characters. That was probative evidence as to originality. The plaintiff then comes in with these other characters. I made this into a costume. I changed the facial characters. Those were new. Those were new things provided by the plaintiff in that case. The court found that's not enough. That's just not original enough. And the case was disposed of on summary judgment. The presumption operates once the defendant rebuts. Then plaintiff has the burden of establishing originality. Entertainment Research case says that. Lamps Plus case says that. There's many other cases in the circuit and others that say that once the burden shifts, plaintiff now needs to establish originality. And here it's unquestionable that they did not. Turning to the compilation issue and how originality is determined as a whole, you know, plaintiff argues on appeal that the court used this analytic dissection test and required the court to, required the plaintiff to trace every element of the design. That's nowhere in the court's order and it's not clear where that comes from. What the court did say is, and I'm quoting the court's order, while the evidence that plaintiff typically copies from clip art art books or other publicly available sources in creating its designs and Howard a little bit, does not necessarily demonstrate lack of originality. It is sufficient to rebut the presumption. The court recognized there could be a compilation here. Yes, part of it could be copied. That rebuts the presumption. All plaintiff now needs to do is come up and show it's a compilation. The court notes this shouldn't be a high burden. The Feist case says this shouldn't be a high burden. But just because it's a low burden doesn't mean it's not a burden. Plaintiff does now need to come forth to the table with evidence to establish what's original. They didn't do that. The court didn't require any tracing. Show me you copied one part, but show me what else you did that was original. Plaintiff couldn't do that because they had no evidence. They had no records. They acknowledged they had no records and they couldn't meet their burden. So the grant of summary judgment was dropped. Thank you. Good morning, Your Honor. This is Doug Land. I'm going to finish the time up for the plaintiffs. I just want to address a few points. I'll start with the point about talking to the designers because I think that's an important point. And the question came up, well, wasn't the defendant prohibited from speaking with designers? Didn't they have a difficult time speaking with the designers? It's set forth in my declaration in opposition to the motion for summary judgment in requesting additional time. The defendants actually spoke with the designers. They spoke with the designers, I believe, prior to the time that their motion was filed. So how did they know who they were if you didn't? Why hadn't you gotten their declarations earlier? Sure. So what happened was it's somewhat difficult to find out who the designers are because there's so many designs and it's not a perfect track. The moment that we figured it out, we gave that information to the defendants just like we had it for ourselves. And then they did a better job finding them than you did? Correct. Because they're former employees. So they knew Mr. Hu. Through Mr. Hu, presumably they tracked down the designer. But the salient point is they spoke to the designer. Mr. Soror spoke to the designer. We know that because in his fee application, he billed for speaking with the designer, Ms. Jang. So it's not a situation where they don't have the evidence. And I'm happy to concede Mr. Soror time to come back up here and talk about his discussions with Ms. Jang. But he definitely spoke with Ms. Jang. So it's not a situation where they're at an informational disadvantage. But it also points to the fact that there should have been time that was given. What about the informational disadvantage about your books? So did you ever identify your books? We did. And we actually, they did a motion with Helen. We offered for them to come in and look at all the books and they declined. I don't know where that is in the record. But that offer still stands today. They can come and look at the books. Those books were not thrown away. And we definitely never said we threw away the books. I think it would be helpful actually, to me anyway, if both sides would identify where in the record they think you didn't get the identification of the books and where in the record you think you said, come look. And then they did. I'm not sure that's in the record, but if we can supplement the record. Why wouldn't it be in the district court? Why wouldn't you be able to prove that you told them you can come look at our books if you want to? If you did that, why can't you prove it? Because I'm not sure. Well, I can prove it through my testimony, but I'm not sure that that was, I think that was following their motion to compel. My recollection on this is hazy, and I'm just not going to say that that's in the record. But the issue is not pushed. And there's definitely nothing in the record where we say we threw away the books or anything like that. Counsel, are you still seeking a reversal of the discovery order? The denial of the keeping of the discovery order? On the extension of time, yes. You contend you still need that evidence? Okay, I don't think that we need it. But under the unusual circumstances of the case, in the words of the district court, if they're really going to apply a new standard to us, and they're saying that we need the testimony of the designer, then we should have time to get the deposition or declaration of the designer. We can speak to the designer just like Mr. Storer spoke to the But your basic argument is that they haven't defeated your presumption of validity, and it doesn't matter. Absolutely. And very specifically, here's why. All that that declaration says from Mr. Hu is, I recognize some things in there. What they are, nobody knows. He never identifies a scroll. He never says this thing, he never circles it. He just says there's some scrolls, there's some butterflies, and he refers to them generically. He says, these generic things in their works are similar to some other things in some books that I can't tell you what their names are. There's no way that that can rebut the presumption. We give the example in our brief of Imagine by John Lennon, and what if somebody came in and did that exact same thing to John Lennon, and now you have to bring in John Lennon, which is impossible, to all of a sudden say exactly how he created the song, because he had a few other songs. And in fact, that is the history of Imagine, that it is inspired by their songs. So when we talk about what's being done to shift, or what's being done to rebut the presumption, there's really nothing. It's just in the air. It's talk in the air. There's no specific anything. There's no reference to anything specific. And that is crucially important. The problem is that if they really had no ability to say more, because you had all the information, and you really did Stonewall, you didn't keep records, and then you didn't show them the books. I understand there's two quick responses to that. The first is the fact that they spoke to the designer and that we didn't, I think tells you about the Stonewalling. It's just it's a difficult process, particularly when what if the designer said, I don't remember, I made 10,000 designs? Well, number one, they would have gotten a declaration that said that, right? Their motion wouldn't have their their motion wouldn't have I don't know, because that's not that different than what you were saying anyway. So it The second point is, with respect to their info, the first point on informational disadvantage is, let's get the answers, right? I think that that's a very reasonable approach, particularly when we're talking about Christmas time, one. The second point with respect to informational disadvantage is this. A lot of this comes up because this is a case of admitted copying, right? So they just have to cross their fingers and pray that this thing is not original. That's their only defense. And that's why we get all of this stuff. They can't, they don't have somebody who they can say, No, I created that. That's my original design. And so when you when you're looking for when we're looking for these things, it's really an effort to bail out somebody who took a design by their own admission. So I think that's why some of these naughty questions arise, because they copy it wholesale. Council, do you have a monopoly on the clip art books? Aren't those regularly available to all your competing industries? Yes. And the un or non copyrighted clip art? Right. So if if they don't have to get the clip art book from you, they can go out on in the market and look 100% and prove that that exact pattern that exact compilation was the one they use 100 years. All right. There's nothing even close to that in the record. All that it says is there's some scrolls in here and I've seen some scrolls. One of the one of the thing in that regard, one of the designs is called the medallion. There's no evidence of any where that medallion is in clip art. Mr. Hu doesn't even mention a medallion. So the dominant thing in that design isn't even mentioned by Mr. Hu. Very There is the declaration of Mr. Esabag that talks about the practice and procedure and the defendants go on and on that we have a practice and procedure of stealing and cobbling things together from other sources. They can't rely on that evidence and then say, well, our evidence that we have a practice and procedure of being original. The trial court found, I'm quoting from the trial court, plaintiff in creating the subject design. True? No. And I'm going to tell you why that's not true. Why? What source material is the district court referring to? And I don't mean to ask rhetorical questions of court, so I may answer it. The district court is not referring to any specific source material. There's no there's no anything that's identified. That's a hypothetical source material. As I understand what they're saying is the plaintiff has failed to present any proof that they added anything by creation to the copybook designs that were already in the public domain. Incorrect. And I mean, it's incorrect because there's no there's no what what evidence was there that there was some creation or some different use, original use of the copybook designs of the medallion and the other one. Sure. We start with the presumption of validity because we have a registered copyright that can't just be disposed of. We know that because of the Ninth Circuit precedents where where I think it's United Fabrics where people have come in and said, well, yeah, there's a presumption. But let's forget that. Let's get to the let's make them prove their case. So we have the presumption. The question beyond that is what is done to rebut that presumption and what's being done to rebut that presumption is two things. That's what the defendant has to rebut. Correct. Pardon me, Mr. Lind. Maybe I didn't make myself clear. This is a question I have. What evidence did the plaintiff present that there was any additional creational element to the use of these two copybook medallions? So the first point on that is that there was nothing is the presumption itself. And there's nothing I'm going to get to it. I'm not trying to get to it. Get to it. So the first the there's nothing being done for us to respond to. Kindly answer my question. This is the last time and I'll give you 10 seconds to do it. Is there any evidence presented by the plaintiff of an additional creative addition to the medallions from the copybook? What is it and where is it in the record? Yes. The declaration of surge as it specifically talks about the design process. That the plaintiff undertakes and that in all instances, the designers are to be original. Thank you very much. OK, thank you. Last point. No, no. That was your last point. Thank you. You were seven minutes over. Thank you very much. The case of ITC textile versus Wal-Mart stores will be submitted. And of course, thanks, counsel, for their argument. That being the last case on the day and this being the last day of the week.
judges: Bea, Friedland, Rice